IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RICHARD CHARLES CUNNINGHAM, JR.,  §
§
    Petitioner,                §
§
v.                                §        2:18-CV-134-Z
§
UNITED STATES OF AMERICA,         §
§
    Respondent.                §

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITIONER'S MOTION TO VACATE**

Before the Court is the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody* filed by petitioner RICHARD CHARLES CUNNINGHAM, JR.   For the reasons set forth below, petitioner's motion should be DENIED.

I.
BACKGROUND

On January 11, 2017, petitioner was charged in a four-count Second Superseding Indictment with the felony offenses of:   (1) conspiracy to commit Credit Union Robbery in violation of 18 U.S.C. § 371; (2) Credit Union Robbery on May 25, 2016 in violation of 18 U.S.C. § 2113(a); (3) Credit Union Robbery on September 23, 2016 in violation of 18 U.S.C. § 2113(a); and (4) using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).[1] *United States v. Cunningham*, 2:16-CR-62(03) [ECF 55].   Specifically, as relevant here, Count Three alleged:

On or about September 23, 2016 . . . [petitioner] by force and violence, and by intimidation, did take, and attempt to take, from the person and presence of employees

---

[1]Petitioner was charged with four (4) other co-defendants in the Second Superseding Indictment.

of Education Credit Union . . . money belonging to, and in the care, custody, control, management, and possession of said Education Credit Union, *a credit union whose accounts were then insured by the National Credit Union Administration Board.*

In violation of Title 18, United States Code, Sections 2113(a) . . . .[2]

[*Id*. at 4] (emphasis added).    The indictment also included a Forfeiture Notice for large sums of seized currency, vehicles and handguns.

On March 20, 2017, petitioner signed a written Plea Agreement wherein he acknowledged his rights, but averred he was waiving such rights and pleading guilty to the offense alleged in Count Three of the Second Superseding Indictment, *viz*., the September 23, 2016 credit union robbery offense in violation of 18 U.S.C. § 2113(a).[3]    [ECF 100].    Petitioner also acknowledged the maximum penalties the Court could impose, stated he understood the Court would impose the sentence after considering the United States Sentencing Guidelines and other statutory factors, was aware the guidelines were not binding on the Court, and understood the actual sentence imposed was solely in the discretion of the Court.    Petitioner also acknowledged he had reviewed the guidelines with his counsel but understood no one could predict with certainty the outcome of the Court's consideration of the guidelines in his case, and that he would not be allowed to withdraw his guilty plea if his sentence was higher than expected.    Petitioner averred his guilty plea was freely and voluntarily made, that there had been no guarantees or promises from anyone as to what sentence the Court would impose, and that he had thoroughly reviewed all legal and factual aspects

---

[2]This charge for the September 23, 2016 credit union robbery offense was worded exactly the same in the original October 12, 2016 Indictment [ECF 3] and November 9, 2016 Superseding Indictment [ECF 40], except for the addition of co-defendants. Petitioner received a copy of the original charging document at his October 18, 2016 Initial Appearance.    [ECF 37 at 4].

[3]Subsection (a) provided:    Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any [] credit union . . . –

Shall be fined under this title or imprisoned not more than twenty years, or both.

Subsection (g) further provided:    As used in this section the term "credit union" means . . . any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board . . . .    The term "State-chartered credit union" includes a credit union chartered under the laws of a State of the United States . . . .

of his case with his lawyer and was fully satisfied with his attorney's legal representation.   In the agreement, petitioner averred he understood the nature and elements of the offense to which he was pleading, conceded he was guilty of the offense, and agreed the factual resume he would sign was true and would be submitted as evidence.   [*Id*.].

On March 21, 2017, petitioner signed a Factual Resume acknowledging the following elements of the Credit Union Robbery offense in violation of 18 U.S.C. § 2113(a) to which he would be pleading guilty:

*First*:     That [petitioner] intentionally took from the person or presence of another, money;

*Second*:     That the money belonged to, or was in the possession of [the] Education Credit Union, *federally insured at the time of the taking*; and

*Third*:     That [petitioner] took the money by means of force and violence or by means of intimidation.

[ECF 99 at 1-2] (emphasis added).   Petitioner also detailed the pertinent facts of the September 23, 2016 credit union robbery, as well as subsequent facts uncovered through law enforcement's investigation, and acknowledged that if required to proceed to trial, the Government would be able to prove such facts beyond a reasonable doubt.   Petitioner specifically acknowledged his understanding that the "Education Credit Union, at all times material to [the] factual resume, was a credit union, *the accounts of which were insured by the National Credit Union Administration Board*."   [*Id*. at 2] (emphasis added).   Petitioner also specifically admitted "that on September 23, 2016, he intentionally took from an Education Credit Union employee money that belonged to, and was in the possession of a *federal insured credit union*" and that "he took this money by means of force and violence, and by means of intimidation.   [*Id*. at 3] (emphasis added).

On March 27, 2017, petitioner, pursuant to the Plea Agreement, pleaded guilty to Count Three of the Second Superseding Indictment charging petitioner with the September 23, 2016

credit union robbery offense in exchange for the Government's agreement to dismiss the remaining counts at the time of sentencing. [ECF 113]. At the re-arraignment, petitioner averred he had read the Second Superseding Indictment and Plea Agreement carefully, had discussed them with his attorney, and understood the Plea Agreement and the nature of the charge to which he was pleading guilty. [ECF 187 at 6, 8]. Petitioner avowed he was not pleading guilty based on any promises by anyone other than the ones in the Plea Agreement, that no one had threatened him or attempted in any way to force him to plead guilty, and that he was pleading guilty voluntarily of his own free will because he was guilty. [*Id*. at 8-9].

Petitioner averred no one had made any specific prediction or promise to him as to what his sentence would be, and that he understood that the sentencing court alone would decide his sentence, taking into account the advisory sentencing guidelines he had discussed with his attorney. [*Id*. at 13-14]. Petitioner advised his attorney had given his professional opinion concerning what he thought the advisory guideline range might be, but understood counsel was simply expressing a professional opinion and not guaranteeing or promising a certain range. [*Id*. at 15]. Petitioner acknowledged that neither the Court or his attorney could determine the advisory guideline range until after a written Presentence Report had been completed, and understood no one, including his attorney could predict in advance what his sentence would be. [*Id*.].

Petitioner agreed that pursuant to the Plea Agreement, he was voluntarily waiving his right of appeal and of post-conviction challenge to his conviction and sentence. [*Id*. at 16]. Petitioner confirmed the accuracy of the Factual Resume, acknowledged the Government had to prove the factual elements set forth in the Factual Resume by competent evidence and beyond a reasonable doubt, and admitted under oath that he committed each of the elements of the charged offense.

[*Id*. at 18-19].    Petitioner also avowed he was fully satisfied with his attorney and the representation and advice given by his attorney.    [*Id*. at 7].    Petitioner also admitted on his oath in open court that he committed each of the essential elements of the offense as they were enumerated in the Factual Resume.    [*Id*. at 18].    As a result, the Court found petitioner understood the nature of the charge to which he was pleading guilty, knowingly and voluntarily waived his trial and post-conviction rights, was fully competent and capable of entering an informed plea, was aware of the nature of the charge and of the consequences of his plea, and that his plea of guilty was a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.    [*Id*. at 19].    The Court thus accepted petitioner's guilty plea and adjudged petitioner guilty of the credit union robbery offense charged in Count Three of the Second Superseding Indictment.    [*Id*.].    Petitioner confirmed that he completely understood everything from the hearing and did not need further explanation from the Court.    [*Id*. at 20].

In a Presentence Report (PSR) prepared May 26, 2017, the United States Probation Officer, in *The Offense Conduct* section of the report, noted the credit union robbed on September 23, 2016 had "been a member of the National Credit Union Administration (NCUA) since March 7, 1935" and had "been insured by the NCUA since April 16, 1991."    [ECF 128-1 at 8].    The PSR further noted "ProSight Specialty Insurance reimbursed the credit unions for their losses.    Therefore, restitution will be owed to ProSight Specialty Insurance."    [*Id*. at 13].    The PSR also determined that based on a Total Offense Level of 26 (which included a 2-level increase because the property taken was from a financial institution, a 6-level increase because a firearm was otherwise used, and a 1-level increase because the loss exceeded $20,000 but less than $95,000) and a Criminal History Category of V, petitioner's advisory Guideline Imprisonment Range was 110 months to

137 months.[4]    [*Id.* at 14-15, 23].    The PSR again noted that restitution was required in the case and would be "due and owing to the following victims:    ProSight Specialty Insurance."    [*Id.* at 25].

On June 8, 2017, the Government filed an objection to the PSR arguing a 4-level increase to the Base Offense Level should have been applied because a "person was abducted to facilitate commission of the offense."    [ECF 131].    On June 9, 2017, petitioner's counsel filed extensive objections to the PSR.    [ECF 29 at 1].    On June 21, 20017, an Addendum to the PSR was filed addressing the parties' objections and adding the 4-level increase for abduction, which increased petitioner's Total Offense Level to 30 and his advisory Guideline Imprisonment Range to 151 to 188 months.    [ECF 141-1].    On July 3, 2017, petitioner's counsel filed extensive objections to the Addendum, reiterating previous objections and strenuously objecting to the 4-level increase for the abduction.    [ECF 154].

On July 10, 2017, the Court held petitioner's sentencing hearing.    [ECF 157].    At the hearing, petitioner acknowledged he had read the PSR, discussed it with his attorney, and understood it.    [ECF 188 at 5-6].    At the hearing, defense counsel thoroughly argued petitioner's objections to the PSR and the advisory guideline range and urged the Court to impose a sentence at the low end of the guideline range.    [*Id.* at 5-9, 12-14, 20-21].    The Government then dismissed Counts One, Two and Four, and requested the Court sentence petitioner at the top of the guideline range based on the violent nature of the robbery and petitioner's elevated criminal history category.    [*Id.* at 18-19].    The Court overruled petitioner's objections, accepted the Plea Agreement, and sentenced petitioner to a 169-month term of imprisonment in the Federal Bureau

---

[4]The PSR further noted that '[h]ad the defendant been convicted of Counts 1 and 2 of the second superseding Indictment, he would have faced a term of imprisonment of 20 years, and a fine of $250,000 on each count" and, additionally, that "Count 4 of the second superseding Indictment carrie[d] a fine of $250,000 and a term of imprisonment of 7 years, which would run consecutive to all other counts."    [*Id.* at 23-24].

of Prisons, a sentence at the mid-point of the advisory guideline range, explaining the Court agreed

with defense counsel that petitioner's criminal history category was "somewhat overstated" and

that the midpoint of the range was sufficient to comply with the statutory purposes for sentencing.

[*Id.* at 26].    The Court also ordered petitioner to pay restitution for disbursement to ProSight

Specialty Insurance and to forfeit any interest in the property set forth in the forfeiture provision

of the Indictment, and then dismissed the remaining counts against petitioner.    [*Id*. at 27, 29-30].

In its corresponding Judgment signed July 11, 2017, under the Special Conditions of

Supervision section, the Court stated:

> Pursuant to the Mandatory Victims Restitution Act of 1996, the defendant shall
> [pay] restitution in the amount of $26,724.50, jointly and severally with the
> codefendants Raul Garcia, Leonard Jovan Coulter, Desire Valverde, and Keli
> Edwards, payable to the United States District Clerk for disbursement to ProSight
> Specialty Insurance.

[ECF 161].

Petitioner, represented by the same counsel, timely appealed his conviction and sentence

to the United States Court of Appeals for the Fifth Circuit.    *United States v. Cunningham*, No.

17-10818.    After petitioner's appointed attorney filed a brief in accordance with *Anders v.*

*California*, 386 U.S. 738 (1967) averring the appeal presented no nonfrivolous issues for appellate

review, petitioner filed a *pro se* response seeking to assert on appeal the ground that the sentencing

guidelines were erroneously calculated in his case because the 4-level enhancement for abduction

under USSG §2B3.1(b)(4)(A) was improper under the facts of the case.    On March 21, 2018, the

appellate court, having reviewed counsel's brief, the record, and petitioner's response, concurred

with counsel's assessment that the appeal presented no nonfrivolous issues for appellate review

and dismissed petitioner's appeal.    [ECF 199].

On July 10, 2018, petitioner placed the instant motion to vacate his sentence in the prison

mail system, such motion being received and this proceeding initiated on July 17, 2018. *Cunningham v. United States*, 2:18-CV-134 [ECF 2].    On September 24, 2018, the Government filed its response in opposition to petitioner's motion.    [ECF 5].    Petitioner did not file a reply to the Government's response.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to argue both his conviction and sentence are in violation of the Constitution and laws of the United States for the following reasons:

1.    Petitioner is actually innocent of the federal criminal offense of Credit Union Robbery because the state-chartered credit union petitioner robbed (the Education Credit Union) was not federally insured by the National Credit Union Association Board (NCUA) at the time of the robbery;

2.    Petitioner was denied effective assistance of counsel in this criminal proceeding because trial counsel:

    a.    advised petitioner to plead guilty to the federal criminal offense of Credit Union Robbery when he was actually innocent of the offense;

    b.    failed to inform petitioner the Government was required to prove, as an element of the offense, that the credit union petitioner robbed was federally insured by the NCUA at the time of the robbery; and

    c.    misadvised petitioner as to the length of sentence he would receive if he pleaded guilty to the credit union robbery offense.

3.    Petitioner's guilty plea was involuntary and unknowing because:

    a.    petitioner was not aware of his actual innocence of the federal criminal offense or of the Government's burden to prove the credit union he robbed was federally insured at the time of the robbery

    b.    counsel misrepresented to petitioner or made an unfulfilled promise as to the length of sentence he would receive if he pleaded guilty to the credit union robbery offense; and

    c.    counsel coerced petitioner into pleading guilty.

4.      The PSR erroneously calculated petitioner's sentencing guidelines and the Court improperly relied on the PSR's erroneous guideline calculations; and

5.      Petitioner was denied effective assistance of appellate counsel.

As relief, petitioner requests this Court vacate his sentence, overturn his conviction, and order his immediate release or, in the alternative, resentence him using a proper guideline calculation.

III.
MERITS

In its September 24, 2018 response, the Government thoroughly and accurately briefed statutory authority and case law regarding the applicable standards of review for relief under 28 U.S.C. § 2255 proceedings, and for reviewing claims of ineffective assistance of counsel (IAC) under *Strickland v. Washington*, 466 U.S. 668, 689 (1984) and its progeny.    [ECF 5 at 10-12].    The Court notes its obligation to follow these clearly established standards without the need of repeating the Government's briefing.

A.    Federally Insured by the NCUA

As noted above, subsection (g) of 18 U.S.C. § 2113 defining a credit union robbery offense provided:    "As used in this section the term "credit union" means . . . any State-chartered credit union the accounts of which are insured by the National Credit Union Administration Board . . . ." Petitioner asserts several related but independent grounds alleging he is entitled to relief as a result of this provision of the federal criminal statute.

*1.    Actual Innocence*

By his first ground, petitioner argues he is factually innocent of the credit union robbery offense to which he pled guilty because the Education Credit Union (ECU) he robbed on September 23, 2016 was not insured by the NCUA at the time of the robbery.    Petitioner appears

to contend that the ECU, instead, was insured by a private, non-federal insurance company, *to wit:* ProSight Specialty Insurance, the company named in the PSR and the Judgment as the recipient of restitution to be paid.    Petitioner concludes that because the ECU was not federally insured by the NCUA at the time he robbed it, his robbery of the credit union was not a federal criminal offense; therefore, he argues that he is actually innocent of the charged offense.

As background for informational purposes only, and in very general terms, the NCUA is a federal agency created by the Federal Credit Union Act in 1934 to charter, supervise and regulate member credit unions.    In addition to its supervisory responsibilities, the NCUA administers a revolving fund within the U.S. Treasury that provides federal insurance coverage to credit union members.    Such coverage is solely to protect individual depositors' account monies in the event of the credit union's *financial failure*.    *See generally* www.ncua.gov.    In contrast, monies taken from a credit union during a robbery or other theft are taken from the credit union, not the individual depositors.    In such a case, the credit union typically has separate private insurance that pays out to the credit union itself, not the depositors.[5]

Here, petitioner acknowledged in his Factual Resume and admitted in open court at re-arraignment that the ECU was federally insured by the NCUA at the time of the robbery.    The PSR detailed that the ECU "has been a member of the National Credit Union Administration (NCUA) since March 7, 1935" and "has been insured by the NCUA since April 16, 1991."    [ECF

---

[5]*See generally* Peter I. Broeman, *An Overview of the Financial Institution Bond, Standard Form No. 24,* 110 Banking L.J. 439, 439-40 (1993) (an insurance policy known in the banking and insurance industries as a "banker's blanket bond" is a "two-party agreement between the underwriter and the insured financial institution to which the underwriter agrees to indemnify the insured against loss sustained by reason of specific perils," *viz.,* loss arising from specified dishonest, fraudulent, or criminal acts; *see, e.g.* https://wallethub.com/edu/sa/ncua-fdic-insurance-limits/10877/ ("Robberies and thefts are treated differently and are not covered by the FDIC or NCUA.    When funds are stolen, they are instead covered by a "blanket bond" policy.    This type of insurance protects banks and credit unions in cases of embezzlement, defalcation, earthquake, fire, flood, robberies, and other cases in which funds are lost.").

128-1 at 8].    Petitioner did not object to these findings in the PSR, nor did petitioner assert that the ECU was not federally insured by the NCUA in his *pro se* brief on appeal.

In this collateral proceeding, petitioner fails to provide any evidence whatsoever to dispute either his admissions or the unchallenged PSR finding, or to support his now-asserted claim that the ECU was not federally insured by the NCUA at the time of the robbery.    The fact that ProSight Insurance may have been an additional, non-federal insurer (and the insurer for the loss incurred as a result of petitioner's robbery of the ECU) does not mean the ECU and its depositors were not also federally insured by the NCUA in the event of the credit union's financial failure.    Moreover, the NCUA provides an online source available to the public that confirms the PSR's unchallenged finding that the ECU, a federally insured state-chartered credit union, was a member of the NCUA and insured by the NCUA at the time of the robbery.    *See* https://mapping.ncua.gov/ (NCUA's credit union locator).    Nothing in the record supports petitioner's claim that he is actually innocent of the federal offense of Credit Union Robbery because the credit union he robbed was not federally insured by the NCUA.    This claim should be denied.

### 2.   *IAC – Advising Petitioner to Plead Guilty when Factually Innocent*

In a related but independent claim, petitioner argues trial counsel was ineffective for advising him to plead guilty to the federal criminal offense of Credit Union Robbery when he was actually innocent of the offense.    Petitioner again asserts his robbery of the ECU on September 23, 2016 was not a violation of federal criminal law because the ECU was not federally insured by the NCUA at the time of the robbery.    Petitioner asserts he was prejudiced by counsel's deficient performance, *i.e.*, advising petitioner to plead guilty to a non-federal criminal offense, because he could not have been convicted of the offense at trial.

As discussed above, petitioner was not actually innocent of the federal criminal offense of

Credit Union Robbery.    The ECU robbed by petitioner was, in fact, federally insured by the NCUA at the time of the robbery.    Petitioner's actions did violate federal criminal statute 18 U.S.C. § 2113.    Petitioner has not demonstrated any deficiency on the part of trial counsel in advising him to plead guilty to the September 23, 2016 credit union robbery federal criminal offense, only one of the four charged offenses, nor has he shown he was prejudiced by trial counsel's advice in this regard.    This claim of ineffective assistance of trial counsel is without merit and should be denied.

### 3.    *IAC – Failure to Inform Petitioner of Elements of Offense and Burden of Proof*

In another related ineffective assistance of counsel claim, petitioner asserts trial counsel's performance was deficient because he did not inform petitioner that the Government had the burden to prove, as an element of the credit union robbery offense, that the ECU was federally insured by the NCUA at the time petitioner committed the robbery.    Petitioner contends that as a result of counsel's failure to so inform him, he was unaware of this specific element of the offense or of the Government's burden to prove this element.    Petitioner concludes he was prejudiced as a result because if counsel had informed him of this element of the offense and the Government's burden of proof (and presumably of the Government's purported inability to meet its burden to show the ECU was federally insured by NCUA at the time of the robbery), he would not have pleaded guilty to the credit union robbery offense and, subsequently, would not have been convicted of the charged offense.

Initially, as discussed in detail in the succeeding subsection, the undersigned finds petitioner clearly knew of the elements of the credit union robbery offenses with which he was charged and that the Government had the burden to prove each of these elements to obtain convictions.    Consequently, the undersigned finds petitioner's allegation that trial counsel did not

inform him of the elements of the offenses with which he was charged, and specifically the offense to which he ultimately pled, not to be credible.

However, even assuming, *arguendo*, that counsel did fail to specifically inform petitioner that the Government had the burden to prove, as an element of the credit union robbery offense, that the ECU was federally insured by the NCUA at the time petitioner committed the robbery and that such failure constituted deficient performance, petitioner has not shown and cannot show any prejudice resulting from any such failure.   Again, as discussed above, the Government could easily meet its burden of proving this element of the offense.   This claim of ineffective assistance of counsel is without merit and should be denied.

### 4.   *Voluntariness of Plea:   Unaware of Actual Innocence,*
### *Elements of Offense and Burden of Proof*

To be constitutionally valid, a guilty plea must be knowing and voluntary.   *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).   A plea is intelligently made when the criminal defendant has "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."   *Bousley v. United States*, 523 U.S. 614, 618 (1998) (*quoting Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).   In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

In this last related but independent claim, petitioner appears to assert his guilty plea to the September 23, 2016 credit union robbery offense was unknowing and involuntary because he was not aware, at the time of his guilty plea, that he was factually innocent of the offense, *i.e.,* that his actions of robbing the ECU on September 23, 2016 did not constitute the federal criminal offense

of Credit Union Robbery.    Petitioner also appears to assert his guilty plea to the September 23, 2016 credit union robbery offense was not knowing and voluntary because he was not aware that the Government had to prove, as an element of the offense, that the ECU was federally insured by the NCUA at the time of the robbery.

Again, as discussed above, petitioner was not, in fact, actually innocent of the charged federal criminal offense of Credit Union Robbery.    Petitioner's robbery of the ECU, a credit union federally insured by the NCUA at the time of the robbery, violated federal criminal statutes. Petitioner cannot demonstrate his guilty plea was unknowing and involuntary on this basis.

Petitioner also asserts his guilty plea was involuntary because he did not know the Government had the burden to prove, as an element of the offense, that the ECU was federally insured.    However, each of the Indictments charging petitioner with the credit union robbery offense specifically alleged petitioner, by force, violence and intimidation, took money from the ECU, "a credit union whose accounts were then insured by the National Credit Union Administration Board."    [ECF 55 at 4].    In addition, the Factual Resume set forth all of the elements of the crime of Credit Union Robbery, specifically identifying the element that "the money belonged to, or was in the possession of Education Credit Union, *federally insured at the time of the taking*."    [ECF 99 at 1].    The Factual Resume further provided that petitioner "understands that Education Credit Union, at all times material to this factual resume, was a credit union, the accounts of which were insured by the National Credit Union Administration Board" and that the Government, if required to proceed to trial, would be able to prove such beyond a reasonable doubt.    [*Id.* at 2].    By signing the Factual Resume, petitioner acknowledged the ECU was federally insured at the time of the robbery as an element of the offense in his Factual Resume, and averred the ECU was insured by the NCUA at the time of the robbery as set forth in the factual

recitation.    Furthermore, at his guilty plea hearing, petitioner admitted under oath that he had received and carefully read a copy of the Second Superseding Indictment, had discussed it with his attorney, and that he understood the nature of the charge to which he intended to plead guilty. [ECF 187 at 6].    Petitioner also confirmed that before he signed the Factual Resume, he had read it carefully, discussed it with his attorney, and understood it before he signed it.    [ECF 187 at 17-18].    Petitioner further "admit[ted] on [his] oath in open court that [he] committed each of the essential elements of the offense as they [were] set forth on the bottom of Page 1 and the top of Page 2" of the factual resume, and he "admit[ted] on [his] oath in open court that the facts set forth on Pages 2 and 3 of the Factual Resume [were] true and correct in every respect."

Given the above admissions and petitioner's failure to provide any reliable, non-conclusory evidence contradicting said admissions, the undersigned finds petitioner has not shown he had no knowledge that the Government had the burden to prove, as an element of the offense, that the ECU was federally insured by the NCUA at the time of the robbery.    Petitioner specifically acknowledged this element of the offense, admitted the facts supported this element, acknowledged the Government's burden of proof, and agreed the Government would be able to prove the facts beyond a reasonable doubt.    Petitioner's claim that his guilty plea was involuntary and unknowing because he was not aware the Government had the burden to prove the ECU was federally insured by the NCUA at the time he robbed it is without merit and should be denied.

### B.    Sentence To be Assessed

Petitioner also asserts several related but independent claims concerning the sentence he purportedly believed he would receive from the trial court after entering his guilty plea to the September 23, 2016 credit union robbery offense.

1.  *Voluntariness of Plea:    Misrepresentation or Unfulfilled Promise by Counsel*

Petitioner appears to argue his guilty plea was involuntary because counsel misrepresented to petitioner the length of sentence petitioner would receive from the trial court.    Specifically, petitioner maintains counsel misrepresented, promised or guaranteed that he would receive no more than a 7-year sentence if he pleaded guilty to the September 23, 2016 offense of Credit Union Robbery.    Petitioner notes he received a 169-month (a 14-year, 1-month) sentence, thereby evidencing counsel's unfulfilled promise, and appears to argue he was prejudiced by counsel's unfulfilled promise because his reliance on such promise induced him to plead guilty.

A guilty plea may be invalid if induced by defense counsel's unkept promises.    *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).    On the other hand, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.    *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985).    "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner's Plea Agreement does not reference any "promise" of a 7-year sentence made by counsel.    Moreover, at the subsequent guilty plea hearing, the following exchanges took place between petitioner, who was under oath, and the Court:

| | |
|---|---|
| THE COURT: | Has anyone made any specific prediction or promise to you as to what your sentence will be? |
| PETITIONER: | No, sir. |
| THE COURT: | Do you understand that I, and I alone, will decide what your sentence will be? |
| PETITIONER: | Yes, sir. |
| THE COURT: | When you and your attorney were discussing whether you wanted to plead guilty in this case, did he discuss the |

|  |  | advisory sentencing guidelines with you? |
|---|---|---|
| PETITIONER: | | Yes, sir. |
| THE COURT: | | Did he explain to you generally how these guidelines work? |
| PETITIONER: | | Yes, sir. |

. . .

| THE COURT: | | When you and your attorney discussed the advisory sentencing guidelines, did he give you his professional opinion concerning what he thought the advisory guideline range might be in your case? |
|---|---|---|
| PETITIONER: | | Yes, sir. |
| THE COURT: | | Do you understand that when he did that he was expressing a professional opinion based upon his experience and expertise in criminal law and in the sentencing guidelines, but that he was giving you his professional opinion, not a guarantee or a promise? |
| PETITIONER: | | Yes, sir. |
| THE COURT: | | Do you understand that neither I nor your attorney will be able to determine the advisory guideline range for your case until after a written Presentence Report has been completed, and you and the Government have each been given an opportunity to object to the facts contained in the Presentence Report as well as the proposed advisory guideline range? |
| PETITIONER: | | Yes, sir. |
| THE COURT: | | So do you understand that no one, including your attorney, can predict in advance what your sentence will be? |
| PETITIONER: | | Yes, sir. |

Based on the above exchange, petitioner not only failed to advise the district judge of any belief

he may have had that trial counsel promised him a 7-year sentence, he expressly denied that anyone

had promised him a specific sentence.    Additionally, there is no reference to a specific sentence,

or any alleged belief on petitioner's behalf that he would receive a specific, in petitioner's PSR. Furthermore, at his sentencing hearing, petitioner did not advise the judge, either before or after sentencing, of his belief that trial counsel had promised him he would not receive a sentence of more than seven (7) years.   Even further, in his *pro se* brief submitted on direct appeal of his conviction, petitioner did not assert such an unfulfilled promise was made.   In fact, the first and only time petitioner has made a claim that trial counsel made such a promise is in the instant motion to vacate.

To obtain relief on an allegation of an alleged unfulfilled promise that is inconsistent with representations made in open court, petitioner must conclusively show:   (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise.   *Unites States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).   Rather than conclusively showing the above requirements, petitioner conclusorily alleges only that counsel promised he would not receive more than a 7-year sentence upon his guilty plea.   The record shows defense counsel did not guarantee petitioner a sentence of no more than seven years, and petitioner has failed to produce any evidence with independent indicia of reliability to support the veracity or validity of his allegations (typically in the form of one or more affidavits from reliable third parties).   In addition, petitioner has failed to make any other showing inconsistent with the bulk of his conduct, or demonstrated other evidence existing in the record proves the likely merit of his specific allegation of a promise.   Petitioner's claim that trial counsel made an unfulfilled promise of a 7-year sentence if he pleaded guilty to the charged offense, and that such promise induced his guilty plea to such an extent that it was involuntary, is without merit and should be denied.

## 2.    *IAC – Misadvice by Counsel*

Similarly, petitioner also contends he was denied effective assistance of counsel because, even if not a promise or guarantee, trial counsel misadvised petitioner, prior to his guilty plea, that he would receive, at most, a 7-year sentence for his conviction of the September 23, 2016 offense of Credit Union Robbery.    Petitioner contends he agreed to enter a guilty plea to Count Three based on his understanding, pursuant to counsel's advice, that he would receive a sentence of less than seven (7) years.    Again, as discussed above, petitioner's claims contradict his plea agreement, the factual resume, and his sworn statements at the guilty-plea colloquy, as well as other documents in the record.    Petitioner fails to establish counsel misadvised him as to the specific length of sentence he would receive for his offense or otherwise performed deficiently.

Moreover, to demonstrate the prejudice required for an ineffective assistance of counsel claim, petitioner must show there is a reasonable probability that, but for counsel's deficient actions, he would not have pleaded guilty but, instead, would have insisted on going to trial.    *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).    A petitioner's bare allegation that he would not have pled guilty is insufficient to meet this stringent standard.    *See Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).    Petitioner has not shown any reasonable probability that he would have insisted on going to trial if not for defense counsel's purported advice concerning the sentence he would likely receive.    The record adequately shows petitioner understood not only the inability to predict with certainty the sentencing guideline calculations, but also the outcome of the trial court's consideration of the advisory guidelines.    The record also demonstrates petitioner understood the advantages of pleading guilty to a single charged offense, specifically the avoidance of exposure to the maximum penalties for each offense with which he was charged.    Petitioner has not clearly demonstrated he would have insisted on going to trial on all four (4) counts of the Second

Superseding Indictment if he had not presumed, based on counsel's alleged statement, that petitioner would receive no more than a 7-year sentence if he pleaded guilty.    Petitioner has not demonstrated he was denied the effective assistance of counsel as a result of defense counsel's alleged advice concerning the sentence he expected petitioner to receive.    This claim should be denied.

## C.    Voluntariness of Plea:    Coercion by Counsel

Petitioner also asserts his guilty plea was involuntary as a result of coercion on the part of trial counsel.[6]    Specifically, petitioner contends counsel "threatened" him by telling him that if he "proceeded to trial he would receive a life term of imprisonment" and "expressly used threats of punishment" to secure petitioner's guilty plea.    [ECF 2 at 17, 22].    Petitioner concludes he "was coerced into pleading guilty" as a result of "counsel's threats of a draconian penalty."    [*Id.* at 21].

If a plea is the result of force, threats, improper promises, deception, misrepresentation, or coercion it is not voluntary.    *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).    Here, the only coercion petitioner identifies on the part of trial counsel is counsel's purported statement that if petitioner went to trial on all four (4) charged offenses rather than pleading guilty to only Count 3, he would receive a life sentence.[7]    Petitioner appears to contend this purported statement by counsel was sufficiently coercive to overbear his will, overcome his independent decision making, and render him unable to weigh rational options.    In fact, petitioner argues counsel's alleged statement amounted to a level of coercion sufficient to render petitioner's plea

---

[6]Although any claims petitioner asserts of an unknowing or involuntary plea are most likely procedurally barred as a result of his failure to raise such claims on direct appeal, the undersigned has nonetheless addressed petitioner's claims.

[7]As noted in the PSR, Counts 1, 2 and 3 allowed for a sentence of imprisonment of up to twenty (20) years each, and Count 4 allowed for a sentence of imprisonment of up to seven (7) years, which was required to run consecutive to all other counts.

involuntary.    Petitioner's assertion of overbearing coercion on the part of his trial counsel, made for the first time in this collateral proceeding, is simply conclusory.    Petitioner has not proffered any evidence with independent indicia of reliability to establish the likelihood of the merits of this claim.

Moreover, in his Plea Agreement, petitioner specifically averred his plea of guilty was not the result of force or threats.    [ECF 100 at 4].    Similarly, at re-arraignment, when petitioner actually entered his guilty plea, he verbally averred no one had threatened him or attempted in any way to force him to plead guilty.    [ECF 187 at 9].    Petitioner's sworn statements directly contradict his current claim of coercion on the part of trial counsel.    Petitioner's declarations, made under oath, carry a strong presumption of verity and petitioner has failed to present any reliable controverting evidence or other verifiable corroboration to refute his sworn testimony given at his guilty plea hearing.    Consequently, the record refutes petitioner's claim that trial counsel coerced petitioner into pleading guilty.    Petitioner's claim that his guilty plea was involuntary as a result of coercion on the part of trial counsel is without merit and should be denied.

D.    Alleged Error in Calculating Sentencing Guidelines

Petitioner also appears to challenge the PSR's calculation of his sentencing guidelines. Specifically, petitioner appears to argue the PSR erred in adding any levels to his Base Offense Level for specific offense characteristics, that the PSR guideline calculations and recommended Guideline Imprisonment Range were thus in error, that the trial court erred by following the PSR guideline calculations and determining his sentence based on the erroneous advisory imprisonment range, and that petitioner's constitutional rights were violated as a result thereof.

The Fifth Circuit distinguishes direct appeals from section 2255 motions and has historically and consistently held a claim challenging the technical application of the Sentencing

Guidelines does not raise an issue of constitutional dimension for purposes of section 2255.[8] *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (misapplication of the Sentencing Guidelines is not a constitutional issue cognizable in section 2255 motions); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).    Therefore, petitioner's instant claims of misapplication of the Guidelines are not cognizable in this section 2255 collateral review proceeding.[9]    Consequently, this Court cannot consider petitioner's non-cognizable claim in this section 2255 proceeding.

Even if a guideline error claim was an appropriate claim to assert in a section 2255 proceeding, the undersigned notes petitioner, in his plea agreement, waived his right to contest his conviction and sentence in a collateral proceeding, including a 28 U.S.C. § 2255 motion, except on certain identified grounds.    Petitioner has not asserted or shown this waiver was invalid or that one of the other exceptions to the waiver is applicable.    As petitioner waived his right to contest his sentence in exchange for his plea agreement, even if such a claim was cognizable, this Court would enforce petitioner's waiver, find the waiver bars an attack on the guidelines calculation, and refuse to consider the asserted guideline calculations error claim.[10]

Lastly, even if petitioner's guideline claim could be properly raised in this 2255 proceeding and if petitioner had not waived such a claim in his plea agreement, petitioner's guideline claim

---

[8] Sentencing a defendant in light of an erroneous application of a sentencing guideline does not alter the statutory boundaries for sentencing for the crime.    It results in incorrect advice to the sentencing court regarding the recommended range of punishment, but it does not authorize the Court to impose an otherwise inapplicable statutory mandatory minimum sentence or a higher than otherwise applicable statutory maximum.    *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (explaining that the Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress").    Because a guideline provision cannot "mandate or authorize any sentence," *see Welch,* 136 S. Ct. at 1265, an erroneous guideline calculation does not alter the range of sentencing options available to the court.

[9] Even if a sentencing court errs in calculating an advisory sentencing range the claim is not cognizable on collateral review.    *See Williamson*, 183 F.3d at 462.

[10] Petitioner does not contend counsel was deficient for failing to advise him that as part of his guilty plea agreement he was waiving his right to collaterally attack his conviction and sentence.

would fail on the merits.    Petitioner appears to argue it was error to increase his Base Offense Level of 20 for any special offense characteristics, *to-wit:*    a 2-level increase because the property taken was from a financial institution, a 6-level increase because a firearm was otherwise used, a 4-level increase for the abduction of a person during the commission of the offense, and a 1-level increase because the loss exceeded $20,000 but less than $95,000.    Petitioner, however, does not provide any basis or other explanation for his position that these level increases were improper and erroneously assessed other than making the blanket statement that the "record does not support" such characteristics.    Petitioner simply argues his advisory guideline imprisonment range should have been 30-37 months based on a Total Offense Level of 17 and a Criminal History Category of V.

Petitioner's conclusory statements fail to demonstrate any error in the PSR's guideline calculations.    Therefore, to the extent petitioner asserts this guideline error claim under the auspices of an ineffective assistance of counsel claim, his claim is without merit because without error in the calculations, petitioner cannot demonstrate counsel performed deficiently. Petitioner's claim should be denied.

### E.   IAC – Appellate Counsel

In his motion to vacate, petitioner asserts as Ground Three that he was denied effective assistance of appellate counsel and refers the Court to his memorandum in support.    In his memorandum, petitioner lists ineffective assistance of counsel on appeal as one of his "issues presented" but otherwise fails to further address the allegation.    The Court can only presume petitioner is asserting appellate counsel's performance was deficient for failing to raise the above claims on direct appeal and, instead, filing an *Anders* brief attesting there were no nonfrivolous issues for appellate review.

As all of petitioner's above claims are without merit, petitioner cannot show it was deficient for appellate counsel to fail to raise said claims on direct review.    Petitioner's claim of ineffective assistance of appellate counsel is without merit and should be denied.

IV.

RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* filed by petitioner RICHARD CHARLES CUNNINGHAM, JR. be DENIED.

V.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of the Findings, Conclusions and Recommendation to petitioner and to each attorney of record by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED June 17, 2020.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.    In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.    Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).    **Any objections must be filed on or before the**

**fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.   *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."   Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.   A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.   *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).